UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARLENE CHIQUITA PARKER,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | Case No.:  20cv2530-BLM<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING**<br><br>**[ECF NOs. 20, 25]** |

Plaintiff Sharlene Parker brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of her claim for Social Security Disability Insurance Benefits.  ECF No. 1.  Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 20-1 ("Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's motion [ECF No. 25 ("Oppo."), and Plaintiff's reply [ECF No. 26 ("Reply")].  For the reasons set forth below, Plaintiff's motion for summary judgment is **GRANTED** and the case is remanded.

## PROCEDURAL BACKGROUND

On August 10, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on March 1, 2018.  See Administrative Record ("AR") at 286.  The claims were denied initially on October 11, 2018, and upon reconsideration on February 7, 2019, resulting in Plaintiff's request for an administrative hearing on March 18, 2019.  Id.

On September 12, 2019, a hearing was held before Administrative Law Judge ("ALJ") Andrew Verne.  Id. at 286-295.  Plaintiff and an impartial vocational expert ("VE"), Robin Scher, testified at the hearing.  Id. at 286.  In a written decision dated October 23, 2019, ALJ Verne determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since March 1, 2018.  Id. at 295.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period (since March 1, 2018).  Id. at 288. At step two, he considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Regulations: "degenerative disc disease; osteomyelitis; schizoaffective disorder; PTSD; obesity (20 CFR 404.1520(c) and 416.920(c))." Id.   At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  Id. at 289.  At step four, the ALJ considered Plaintiff's severe impairments and determined that her residual functional capacity ("RFC") permitted her

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to lifting and carrying 20 pounds occasionally, and 10 pounds frequently; standing and/or walking up to six hours in an eight hour workday; sitting up to six hours in an eight hour workday; no climbing, crawling, crouching, kneeling, and stooping; should avoid concentrated exposure to hazards, including unprotected and dangerous moving machinery; requires a cane for ambulation; is limited to simple repetitive tasks; no interaction with the public; occasional contact with coworkers and supervisors; is unable to engage in fast-paced work; and should remain in a low stress environment.

Id. at 290.  The ALJ found that Plaintiff was unable to perform any of her past relevant work as a home attendant, telephone solicitor, or security guard.  Id. at 293.  This was confirmed by the VE's testimony that a person with the RFC defined above could not meet the demands of a home attendant, telephone solicitor, or security guard.  Id.   The ALJ also found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including office helper, photocopy machine operator, and produce sorter.  Id. at 294.

Plaintiff requested review by the Appeals Council.  Id. at 302.  In an order dated February

20cv2530-BLM

21, 2020, the Appeals Council explained that it granted Plaintiff's request for review pursuant to 20 CFR 404.970 and 416.1470, vacated the ALJ's October 23, 2019 decision, and remanded the case to consider whether Plaintiff could perform the identified jobs with the restriction of standing with a cane. Id. at 302.  The Appeals Council opined that this information was crucial as light work requires being on one's feet for up to two thirds of the workday and the ability to stand tends to be more critical than the ability to walk in unskilled light jobs.  Id.  The Appeals Council noted the ALJ's decision did not explain why Plaintiff needed a cane to ambulate but not stand and did not address whether the jobs could be performed if Plaintiff needs a cane to stand. Id. The Appeals Council stated that the ALJ relied on the testimony of the VE in reaching his decision, but that the VE "did not specifically address how said jobs could be performed with the general restriction of ambulation with a cane." Id.  On remand, the Appeals Council ordered the ALJ to

> [o]btain additional evidence concerning the claimant's degenerative disc disease, osteomyelitis and obesity in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512 and 416.912). The additional evidence may include, if warranted and available, a consultative physical examinations and medical source opinions about what the claimant can still do despite the impairments [and to] [o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14).  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966).  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4P).

Id. at 303.

On June 30, 2020, a second hearing was held before ALJ Verne.  Id. at 144-155.  Plaintiff and VE Scher testified at the hearing.  Id.  In a written decision dated September 23, 2020, ALJ Verne again determined that Plaintiff had not been under a disability, as defined in the Social

20cv2530-BLM

Security Act, since March 1, 2018.  Id. at 154.  Plaintiff requested review by the Appeals Council.

Id. at 1.  In a letter dated November 30, 2020, the Appeals Council denied review of the ALJ's

ruling, and the ALJ's decision therefore became the final decision of the Commissioner.  Id. at

1-3.

## ALJ's DECISION

In his second decision, the ALJ again determined that Plaintiff was not disabled as defined

in the Social Security Act.  AR at 154.  At step one, the ALJ determined that Plaintiff had not

engaged in substantial gainful activity during the relevant time period (since March 1, 2018).

Id. at 147.  At step two, he considered all of Plaintiff's medical impairments and determined that

the following impairments were "severe" as defined in the Regulations: "osteomyelitis, left knee

osteoarthritis, hypertension, thoracic and lumbar disc degeneration, obesity, depression and

schizoaffective disorder (20 CFR 404.1520(c) and 416.920(c))."  Id.  At step three, the ALJ found

that Plaintiff's medically determinable impairments or combination of impairments did not meet

or medically equal the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  Id. at 147.  At step

four, the ALJ considered Plaintiff's severe impairments and determined that her RFC permitted

her

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except
> able to lift, carry, push and pull 20 pounds occasionally and up to 10 pounds
> frequently; stand and/or walk 6 hours and sit 6 hours in an 8 hour workday with
> normal breaks; occasionally climb ramps and stairs, but unable to climb ropes,
> ladders or scaffolds; should avoid concentrated exposure to hazards including
> unprotected heights and dangerous moving machinery; able to perform simple
> repetitive tasks, to interact with no public contact and occasional contact with co-
> workers and supervisors, unable to engage in fast paced work in a low stress
> environment with few work place changes.

Id. at 148.  The ALJ did not include a limitation that Plaintiff required a cane for ambulation.[1]

_____

[1] During the hearing, the ALJ asked Plaintiff's counsel if there was a prescription for an assistive
device anywhere in the record and noted that

> Here's the problem with the walker and the assistive devices.  Every time I send

20cv2530-BLM

Id.  The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Id. at 149.  The ALJ again found that while Plaintiff could not perform her past relevant work, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Id. at 153.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  Id.; see also Miner v. Berryhill, 722 Fed. Appx. 632, 633 (9th Cir. 2018) (We review the district court's decision de novo, disturbing the denial of benefits only if the decision "contains legal error or is not supported by substantial evidence.") (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)).

Substantial evidence is "more than a mere scintilla but may be less than a preponderance."  Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021)  (quoting Molina v. Astrue, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by regulation on other grounds*.  It is relevant evidence that a reasonable person might accept as adequate to support a conclusion after considering the entire record.  Id.  See also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  "In determining whether the Commissioner's findings are supported by substantial evidence, [the court] must review the administrative record as a

---

one up that requires one that doesn't have a diagnosis they send it back.  So I need to find a diagnosis for the walker and do you have one, or a cane, any type of prescription, anything from some doctor has said that would support that?

AR at 228-229.  Counsel responded that a prescription may be difficult to find but that a physical therapist cannot give an assistive device without it being prescribed by a doctor and that she would provide the ALJ with something to support that position.  Id. at 229.

20cv2530-BLM

1    whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's]

2    conclusion." Laursen v. Barnhart, 127 Fed. Appx. 311 (9th Cir. 2005) (quoting Reddick v. Chater,

3    157 F.3d 715, 720 (9th Cir. 1998)).  Where the evidence can reasonably be construed to support

4    more than one rational interpretation, the court must uphold the ALJ's decision.  See Ahearn,

5    988 F.3d at 1115-116 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)).  This

6    includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.

7    Id. at 1115 ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical

8    testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not

9    supported by substantial evidence in the record as a whole") (quoting Andrews v. Shalala, 53

10    F.3d 1035, 1039 (9th Cir. 1995) and Molina, 674 F.3d 1110-1111).

11       Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions,

12    the court must set aside the decision if the ALJ failed to apply the proper legal standards in

13    weighing the evidence and reaching his or her decision.  See Miner, 722 Fed. Appx. at 633.

14    Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the

15    Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court also may remand the matter

16    to the Social Security Administration for further proceedings.  Id.

17                                    **DISCUSSION**

18        A.     Subjective Symptom Testimony

19       Plaintiff's first argument is that the ALJ failed to properly evaluate her consistent

20    testimony.  Mot. at 16-26.  Plaintiff argues that the ALJ erred by relying on general statements

21    that Plaintiff's condition was manageable or that she could perform daily functions to discount

22    Plaintiff's testimony and that the daily functions do not equate to Plaintiff being able to "function

23    effectively in a workplace."[2]  Id. at 18.  Plaintiff notes that her testimony is consistent with the

24    record and that her testimony should be deemed as true because the ALJ failed to articulate

25

26    ─────────────────

27    [2] Plaintiff appears to argue that the ALJ found her not credible due in part to her activities of daily living.  Mot. at 17-19.   The Court agrees with Defendant [see Oppo. at 15-16] that the ALJ did not discount Plaintiff's allegations based on her activities of daily living and, therefore,

28    the Court will not address this argument.

20cv2530-BLM

1 legally sufficient reasons for rejecting it.  Id. at 18-26.

2   Defendant contends that the ALJ properly weighed Plaintiff's subjective allegations and

3 that the medical evidence and Plaintiff's treatment history supported the ALJ's findings.  Oppo.

4     1. Relevant Law

5   The Ninth Circuit has established a two-part test for evaluating a claimant's subjective

6 symptoms.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  "First, the ALJ

7 must determine whether the claimant has presented objective medical evidence of an underlying

8 impairment which could reasonably be expected to produce the pain or other symptoms

9 alleged." Id. (internal quotation marks and citation omitted).  The claimant, however, need not

10 prove that the impairment reasonably could be expected to produce the alleged degree of pain

11 or other symptoms; the claimant need only prove that the impairment reasonably could be

12 expected to produce some degree of pain or other symptom.  Id.  If the claimant satisfies the

13 first element and there is no evidence of malingering, then the ALJ "can [only] reject the

14 claimant's testimony about the severity of her symptoms . . . by offering specific, clear and

15 convincing reasons for doing so." Id. (internal quotation marks and citation omitted).  "General

16 findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

17 evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting

18 Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  The ALJ's findings must be "sufficiently

19 specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's]

20 testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

21   When weighing the claimant's testimony, "an ALJ may consider . . . reputation for

22 truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities,

23 and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed

24 course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks

25 and citation omitted).  An ALJ also may consider the claimant's work record and testimony from

26 doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which

27 the claimant complains.  Thomas, 278 F.3d at 958–59 (internal quotation marks and citation

28 omitted); see also 20 C.F.R. § 404.1529(c).  If the ALJ's finding is supported by substantial

evidence, the court may not second-guess his or her decision.  See Thomas, 278 F.3d at 959; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

As an initial matter, neither party contests the ALJ's determination that Plaintiff has the following severe impairments: "osteomyelitis, left knee osteoarthritis, hypertension, thoracic and lumbar disc degeneration, obesity, depression and schizoaffective disorder (20 CFR 404.1520(c) and 416.920(c))."   AR at 147.   Because the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"—a finding that is not contested by either party—the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.  Id. at 149; see also Lingenfelter, 504 F.3d at 1036; Mot., Oppo.  Furthermore, neither party alleges that the ALJ found that Plaintiff was malingering.  See Mot.; Oppo.  As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms.  See Lingenfelter, 504 F.3d at 1036.

The ALJ identified two reasons for discounting Plaintiff's subjective claims: (1) Plaintiff's claims were inconsistent with her treatment history and (2) Plaintiff's claims were inconsistent with the objective medical evidence.  See AR at 151.  The Court will consider each reason individually.

### 2.   Plaintiff's Testimony

In her December 6, 2018 Adult Function Report, Plaintiff wrote that she was homeless and that she could not stand for more than five minutes and could not bend, push, pull, stand, sit, or walk for long periods of time.  Id. at 516.  Plaintiff also reported that she had chronic back pain, discitis, and spine osteomyelitis.  Id.  Plaintiff further reported that pain and nightmares disturbed her sleep, it took her two hours to get dressed, she needed a stool to bathe or shower, and that she had to try to rush to the toilet or wear diapers.  Id. at 517, 523.  Plaintiff noted that she never prepared food and received her meals from St. Vincent DePaul because she was homeless and because she could not stand long enough to prepare a meal without falling down.

20cv2530-BLM

*Id.* at 518.  Plaintiff reported that she could not go out alone because she falls when she has to stand for more than five minutes.  *Id.* at 519.  Plaintiff wrote that she could pay bills and count change and that she spent her days reading, watching television, and on social media.  *Id.* at 519-520.  Plaintiff also wrote that she had difficulty focusing and following written instructions due to the voices in her head.  *Id.* at 521.  Plaintiff wrote that she could follow oral instructions but often got confused on how to execute the instructions.  *Id.*  Plaintiff wrote that she had difficulty getting along with authority figures because they followed her and tried to set her up to go to jail.  *Id.* at 522.  She believed that everyone was against her and that she did not handle change well.  *Id.*  When Plaintiff was stressed, she picked at her skin until it bled.  *Id.*  She noted that people were always following her and the voices in her head told her that the people following her were trying to poison and hurt her.  *Id.*  Plaintiff reported that she used a cane, walker, wheelchair, brace/splint, and glasses/contact lenses every day.  *Id.* at 522.

At the September 12, 2019 hearing, Plaintiff testified that she was homeless and had enrolled in some college classes but was going to drop them all because she had too much trouble walking.  AR at 168.  Plaintiff testified that she could barely walk and that she could not lift or bend.  *Id.* at 172.  She stated that she had to lay down a lot of the time because of the pain she experienced and that her legs swell up when she sleeps.  *Id.*  Plaintiff also testified that she used a cane prescribed by her primary doctor, Dr. Bathrin, and that she also had a walker.  *Id.* at 176.  Plaintiff noted that the pain specialist told her that she walked like an eighty-year-old person.  *Id.* at 190.  Plaintiff testified that her primary doctor referred her for breast reduction surgery, she regularly saw a psychiatrist, Dr. Lim, and she took medication for her mental health.  *Id.* at 177-179.  Plaintiff reported that she frequently heard voices, believed that people are following her, taking her picture, and trying to poison her and that she was afraid to go out at night because she believed that something bad might happen.  *Id.* at 183-185.  Plaintiff also testified that she experienced numbness in the bottoms of her feet.  *Id.* at 187-189.

At the June 30, 2020 hearing, Plaintiff testified that she could not walk and could not stand for more than five minutes and that her condition had worsened since her first hearing.  *Id.* at 214.  She also testified that she qualified for breast reduction and left knee replacement

surgery, but had to postpone the procedures due to the pandemic.  Id.  Plaintiff reported that she could not lift more than ten pounds, needed help with cooking and bathing, and wore diapers because she was often unable to make it to the bathroom on time.  Id. at 216.  Plaintiff testified that her doctor ordered her a chair for the shower but that it did not fit well into her tub, and she had a recent accident where she fell in the shower and was advised to get x rays.  Id.  at 218.  Once or twice a week, Plaintiff had a friend stop by who helped her shower and prepare food.  Id. at 219.  That is the only time Plaintiff showers.  Id.  Plaintiff needed help getting up and down the stairs to her apartment because she was unable to carry her walker down and needs to hold onto the railing while someone holds her arm.  Id. at 218.  Finally, Plaintiff testified that she was undergoing mental health treatment and on medication for her mental health concerns.  Id. at 216.

### 3.   Plaintiff's Treatment History

In assessing Plaintiff's credibility, the ALJ stated that "the record indicates some improvement and management of left knee and back pain with medication and treatment." Id. at 152.  Regarding Plaintiff's mental health, the ALJ stated that "the record indicates [Plaintiff] continued on medication management and therapy." Id. at 151.  In support of his findings, the ALJ cited page 9 of Exhibit 6F.  Id. at 152. This exhibit is an initial assessment from when Plaintiff was admitted into a nursing home in July 2018.  Id. at 754.  The page identified by the ALJ reported that Plaintiff was experiencing malaise, was being treated with Norco for her sciatica, and that her judgment and insight was intact.  Id.  The ALJ also cited to Exhibit 7F at 13-14.  Id. at 151.  This exhibit is a medical record from Dr. Vafadaran from December 19, 2018 and states that Plaintiff "believes the pain is manageable at the current level of control" and that the current level of control, which included Plaintiff taking 3-4 Norco pills a day while she waited to see the pain specialist, "allow[ed] [Plaintiff] to perform daily functions and stay independent." Id. at 784-785.  Next, the ALJ cited to Exhibit 8F at 14-15 which is a medical record from Dr. Vafadaran from June 21, 2019 that states the same thing as the December 19, 2018 record except that Plaintiff's current level of pain control increased to one hundred Norco pills per month while she waited to see the pain specialist.  Id. at 810-811.  The

ALJ also cited to Exhibit 13F at 17, an October 17, 2019 medical record from NP Tara Kelly, that states Plaintiff's knee pain "has gotten worse in the past month and half" and that "patient rates her pain as Pain Score: 8 out of 10 pain." Id. at 902.  This report came after Plaintiff tried physical therapy and opiate pain medication, but also noted that Plaintiff "[j]ust had a cortisone injection the other day" and "report[ed] excellent improvement in pain." Id.  Finally, the ALJ cited to Plaintiff's testimony at the September 12, 2019 hearing where she stated that she has been treating with her psychiatrist Dr. Lim for several months and taking medications for her mental health.  Id. at 176-178.

> a.     Relevant Law

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra, 481 F.3d at 750–51 (citation omitted) (finding that treatment with over-the-counter pain medication was conservative treatment).  Claims of a lack of improvement may be rejected by pointing to clear and convincing evidence that directly undermines it, such as evidence that a claimant's symptoms improved with the use of medication.  See Bumala v. Berryhill, 2017 WL 1502798, at *6 (D. Or., Apr. 26, 2017) (the ALJ pointed to specific evidence undermining the credibility of Bumala's statements regarding the extent of her disability by looking to the improvement of Bumala's condition with medication") (citing Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (holding that the ALJ may consider the effectiveness of medication in assessing claimant's credibility); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998), as amended (Jan. 26, 1999) (holding that ALJ may rely upon plaintiff's use of helpful medication in discounting testimony credibility); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (holding that documented improvement with medication undermined claims of lack of improvement); Fenton v. Colvin, 2015 WL 2250468, at *5 (D. Or. May 13, 2015) ("[T]he record supports that Plaintiff improved with medication and improvement with medication may be a clear and convincing reason to discount credibility.")).

> b.     Physical Health

The nature of Plaintiff's treatment is not a clear and convincing reason for rejecting Plaintiff's symptom testimony regarding her physical health.  First, Plaintiff's treatment was not

20cv2530-BLM

conservative. There is "no guiding authority on what exactly constitutes 'conservative' or 'routine' treatment." <u>Fiona M. B. v. Kijakazi</u>, 2022 WL 848332, at *2 (S.D. Cal., Mar. 22, 2022) (quoting <u>Childress v. Colvin</u>, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014)). Authority on whether narcotic pain medication alone constitutes conservative treatment is inconsistent. <u>See</u> <u>Vuoso v. Colvin</u>, 2016 WL 1071576, at *9 (C.D. Cal. Mar. 16, 2016); <u>Compare</u> <u>Aguilar v. Colvin</u>, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications."), with <u>Vuoso</u>, 2016 WL 1071576, at *9 (upholding ALJ's finding that claimant's treatment was "conservative and routine" when she was "prescribed two narcotic medications" but received no other pain-related treatment such as a TENS unit, physical therapy, a corset or brace, or epidural steroid injections). Here, Plaintiff was taking ninety to one hundred 10mg Norco[3] pills a month to manage her pain. That alone could constitute non-conservative care. <u>See</u> <u>Aguilar</u>, 2014 WL 3557308, at *8. When Plaintiff's Norco usage is considered in combination with the fact that Plaintiff was also prescribed and received physical therapy [<u>see</u> 816, 843, 884, 1056, 1065-68], knee injections [<u>see</u> 888, 902, 905, 983, 989, 995, 1056], referrals to pain management, orthopedics, a breast reduction surgeon for her lumbar spine disease, aqua therapy, and a spine surgeon [<u>see</u> 594, 785, 866, 870, 1009], a bath and shower chair [<u>see</u> 1009], a commode [<u>see</u> 1009], a brace [<u>see</u> 793], a walker [<u>see</u> 793, 991, 1102, 1006], a cane, and Percocet [<u>see</u> 863, 880, 992, 1016], the ALJ's finding that Plaintiff's testimony is not credible, due to the medication and treatment she received, is not supported by substantial evidence.

Additionally, the ALJ's finding that Plaintiff's physical impairments improved such that her subjective symptom testimony was not credible is not supported by the record. As noted by the ALJ, there were some improvements. <u>Id.</u> at 152. Specifically, the ALJ highlights that in

---

[3] "Norco contains a combination of acetaminophen and hydrocodone. Hydrocodone is an opioid pain medication. An opioid is sometimes called a narcotic. Acetaminophen is a less potent pain reliever that increases the effects of hydrocodone. Norco is used to relieve moderate to moderately severe pain." https://www.drugs.com/norco.html.

20cv2530-BLM

December 2018 and June 2019, Plaintiff's pain level was manageable with 3-4 Norco tablets daily which allowed Plaintiff "to perform daily functions and stay independent" and that after receiving a cortisone injection, Plaintiff reported that she "felt like [she] wanted to jump around." Id. at 152 (citing Exhs. 7F/13-14 (784-785) and 13F/17 (902)).  The problem with the improvements noted by the ALJ is that many of the improvements were temporary and Plaintiff's overall condition did not significantly improve. Aaron S. v. Kijakazi, 2021 WL 3373791, at *5 (D. Or., Aug. 3, 2021) (finding that "[t]he ALJ erroneously determined that short term improvements to Plaintiff's diabetes symptoms were a reason to discredit his subjective symptom testimony" where Plaintiff's diabetes symptoms did not significantly improve" and noting that "[i]mprovement with treatment is to be expected.  The mere occurrence of 'some improvement,' does not undermine a treating physician's opinion that their patient's impairments render him unable to work.") (quoting Morales v. Berryhill, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017)).  Here, even with the limited improvements, the records show that throughout 2019 and 2020, Plaintiff's doctors continued to recommend Plaintiff for surgery, physical therapy, and pain control after her examinations.[4] See AR at 1050 ("referral to Sports", follow up "with pain management for chronic lower back/other pain," "[r]eferral for breast reduction surgery to help with chronic lumbar spine disease"), 986 (referral for home health for knee pain and mental health problems), 991 (noting that Plaintiff got her walker on April 21, 2022), 997 (Plaintiff underwent corticosteroid injection in February 2020 "with minimal improvement" and "pain interferes with age appropriate functional activities such as ambulation and/or standing"), 1001 (follow up on the referral to ortho, follow up with PT), 1009 (referral to ortho, DME Order for shower chair and commode).  While it does not appear that Plaintiff underwent surgery, she testified that she was approved and scheduled for breast reduction surgery and a left knee replacement surgery that was cancelled due to the pandemic.  Id. at 214.  Accordingly, there is

---

[4] The ALJ notes that Plaintiff was not a candidate for orthopedic surgery because she did not exhaust conservative management of her musculoskeletal pain, but the record the ALJ cites to was completed by Nurse Tara Kelly and not Plaintiff's treating physician or another doctor.  AR at 151, 905.

not substantial evidence supporting the ALJ's decision to discredit Plaintiff's testimony regarding her physical limitations based on her alleged improvements. See Dennis R. v. Commissioner of Social Security, 2021 WL 2328374, at *2 (W.D. Wash., June 8, 2021) (finding that "[i]mprovement with treatment was not a clear and convincing reason to discount Plaintiff's testimony" where "records note some improvement, but none indicate Plaintiff's symptoms were fully relieved or otherwise contradict Plaintiff's testimony").

The Court also notes that the ALJ does not adequately address the credibility of Plaintiff's claims regarding her need to use a cane to stand and walk. In the first RFC, the ALJ found that Plaintiff needed a cane to ambulate but did not specifically address whether Plaintiff needed a cane to stand. Id. at 290. The Appeals Council noted this oversight. Id. at 302. In the second RFC, the ALJ did not include a limitation that Plaintiff needed a cane to stand or ambulate, despite the fact that Plaintiff testified as to that need. Id. at 148. The ALJ did not address his decision to eliminate the limitation, did not explicitly state that he was discounting or rejecting Plaintiff's testimony regarding her need to use a cane, and did not identify the specific evidence that undermines Plaintiff's claims regarding her reliance on the cane and assistive devices. Id. at 149-151. Rather than provide evidence and analysis focused on Plaintiff's claim that she needs a cane, the ALJ recites general statements about Plaintiff's overall medical treatment, temporary improvements, and some normal examinations. Id. This is insufficient. As a result, the ALJ has not provided a clear and convincing reason for discounting Plaintiff's claim that she needs a cane to stand and ambulate. See Kimberly M. v. Saul, 2021 WL 810250, at *4 (N.D. Cal., Mar. 3, 2021) (finding the ALJ erred by fashioning a cane limitation that was inconsistent with the Plaintiff's subjective testimony regarding her need for a cane because the ALJ failed to cite any evidence that was inconsistent with Plaintiff's cane testimony).

For the reasons set forth above, there is not substantial evidence supporting the ALJ's decision to discount or reject Plaintiff's claims regarding her physical health limitations based upon her treatment history and limited improvements and the stated reason does not constitute a clear and convincing reason to discount or reject Plaintiff's symptom testimony regarding her physical health.

20cv2530-BLM

c.   Mental Health

With regard to Plaintiff's mental health, the ALJ highlighted Plaintiff's testimony that she (1) cannot work because she hears voices, (2) suffers from PTSD, (3) has nightmares, and (4) suffers from mental health conditions making it difficult to concentrate, complete tasks, and maintain and form relationships with others.  Id. at 149.  In discounting Plaintiff's testimony, the ALJ cited to Exhibit 5F at 1, a letter from Friendship Manor Nursing & Rehabilitation center noting that Plaintiff was admitted to the facility on June 29, 2018 and taking Seroquel, Trintellix, and Prozolin.  Id. at 151, 736.  The other records cited by the ALJ show Plaintiff was prescribed Haldol, Cogentin, and Prazosin, in addition to the Seroquel and Trintellix.  Id. (citing Exhs. 8F at 4, 7, 13F at 44, 48, 61 (800, 803, 929)).  As the ALJ correctly states, these records show that Plaintiff continued to use medication management and therapy to address her mental health impairments.  However, Plaintiff does not dispute that she continued medication management and therapy.  Plaintiff testified that despite the medication and treatment, she continued to experience mental health symptoms.  Id. at 183-185, 216, 522.  The ALJ does not identify any medical record or opinion stating that Plaintiff's mental health medications and therapy eliminated Plaintiff's mental health symptoms, nor does he explain how the fact that Plaintiff continues with the identified treatment undermines her credibility as to the mental health symptoms and limitations that she continued to experience.  Id. at 151-152.

A second argument presented by the ALJ was that the record indicates normal mental status examinations.  In support, he cites to Plaintiff's July 4, 2018 H&P Note signed by Dr. Afshar noting that Plaintiff denied anxiety/depression, had normal speech, appropriate mood and affect, relevant and logical thought processes, and normal thought content.  Id. at 151 (citing Exh. 5F at 6 (741)).  The ALJ also cites to a July 28, 2018 SOAP Note stating that Plaintiff denies anxiety/depression and had normal speech, appropriate mood and affect, relevant and logical thought processes, and normal thought content.  Id. (citing Exh. 6F at 11-12 (756-757)).  The record further indicates that Plaintiff's judgment was realistic with normal insights and that she was oriented to time, person, and place with normal recent and remote memory and attention span.  Id.  Next, the ALJ cites to the notes from Plaintiff's July 1, 2019 and July

15

31, 2019 appointments with P.A. Paul. Id. (citing Exh. 9F (836-841)). The records note that Plaintiff admitted to anxiety/depression but was oriented to person, time and place, had intact memory, immediate and long term recall, judgment and insight, normal attention and concentration abilities and a fund of knowledge within normal limits. Id. There were similar findings from Plaintiff's August, September, and December 2019 appointments. Id. (citing 12F (873-885), 13F/15 (900), 87). Finally, the ALJ cited to Plaintiff's November 2018 Mental Health Services – Adult Behavioral Health Assessment Id. (citing 13F/87 (972)).

While the cited records do show normal mental status examinations, all of the records cited by the ALJ except for one, Exh. 13F/87, are from appointments addressing concerns with Plaintiff's physical health, not mental health. At the appointments cited by the ALJ, Plaintiff's chief complaints were back, joint, and lower extremity pain. Id. at 836, 873, 878, 883, 898. Plaintiff was not being evaluated by mental health care professionals or for her mental health. Id. at 836 (provider Robert Paul, P.A.), 873 (same), 878 (same), 898 (same), 883 (provider Courtney Farrar, DPT). The ALJ ignores the records showing abnormal mental health exams. Id. at 803-804 (on February 28, 2019 Plaintiff exhibited impaired insight, a limited fund of knowledge, auditory hallucinations, paranoid ideation, paucity of thought content, severe clinical complexity and severe life circumstances), 799-801 (on April 30, 2019 Plaintiff exhibited poor judgment/insight, a limited fund of knowledge, auditory hallucinations, paranoid ideation, paucity of thought content, severe clinical complexity and severe life circumstances), 850-852 (on September 6, 2019 Plaintiff exhibited poor insight, poor recent/remote memory, a limited fund of knowledge, delusions, paranoid ideation, paucity of thought content, severe clinical complexity and severe life circumstances). For these reasons, the nature of Plaintiff's mental health treatment is not a clear and convincing reason for rejecting Plaintiff's symptom testimony regarding her mental health.

3.   Inconsistent with the Objective Medical Evidence

The second reason provided by the ALJ for discounting Plaintiff's credibility, was that "the objective medical evidence generally does not support the alleged loss of function." Id. at 151. Inconsistencies with the objective medical evidence cannot be the sole reason provided by an

20cv2530-BLM

ALJ for discounting a Plaintiff's credibility.  "[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of ... testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment].'"  Ondracek v. Comm'r of Soc. Sec., 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005)); see also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001), 261 F.3d at 857 (a claimant's testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence"); Burch, 400 F.3d at 680 ("an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain"); Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); Social Security Ruling ("SSR") 16–3p (S.S.A. Oct. 25, 2017) (stating that SSA adjudicators should "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").

Here, the Court has found that the only other reason provided by the ALJ for discounting Plaintiff's credibility, the nature of her treatment, including her alleged improvements, is not a clear and clear and convincing reason.  Because the objective medical evidence cannot be the only reason for discounting Plaintiff's testimony, and the ALJ has not offered another clear and convincing reason, the Court finds the ALJ has not satisfied his burden and **GRANTS** Plaintiff's motion for summary judgment on this issue.

B.    Appeals Council Order

Plaintiff argues that the ALJ failed to comply with the order from the Appeals Council directing the ALJ to

Obtain additional evidence concerning the claimant's degenerative disc disease, osteomyelitis and obesity in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512 and 416.912).  The additional

evidence may include, if warranted and available, a consultative physical examinations and medical source opinions about what the claimant can still do despite the impairments.

Mot. at 28.  Plaintiff argues that this failure along with the ALJ's failure to develop the record, robs the ALJ's opinion of substantial evidence.  Id. at 28-29.  Defendant contends that Plaintiff's argument regarding the ALJ's compliance with the Appeals Council order "is inaccurate and not properly before the Court."  Oppo. at 18 n.4.

Circuit courts and district courts within the same circuit have varied in their findings of whether the court may rule on an ALJ's compliance with an Appeals Council remand order. Cathey v. Saul, 2021 WL 4129491, at *8–9 (S.D. Cal., Sept. 10, 2021) (citing Inteso v. Comm'r of Soc. Sec., 2017 WL 9485668, at *9-10 (N.D. Ohio Oct. 4, 2017) (explaining different opinions of federal courts' review of an ALJ's failure to comply with an Appeals Council's remand order); and Huddleston v. Astrue, 826 F. Supp. 2d 942, 954 (S.D.W. Va. 2011) (citing different courts' approaches)).  In the unpublished decision Tyler v. Astrue, 305 Fed. App'x 331, 332 (9th Cir. 2008), the Ninth Circuit found that

> [t]he district court properly declined to evaluate whether the ALJ's second decision satisfied the demands of the Appeals Council's remand. The law of the case doctrine does not apply because the Appeals Council remanded to the ALJ to make further findings; it did not decide any issues of fact or law itself. Additionally, federal courts only have jurisdiction to review the final decisions of administrative agencies. See 42 U.S.C. § 405(g). When the Appeals Council denied review of the ALJ's second decision, it made that decision final, *Ramirez v. Shalala*, 8 F.3d 1449, 1451 (9th Cir.1993), and declined to find that the ALJ had not complied with its remand instructions.

Id. at 9.  Tyler has been followed by Ninth Circuit district courts.  Id. (citing Caravia-Moroianu v. Berryhill, 2018 WL 1187502, at *1 (C.D. Cal. Mar. 6, 2018) (while court would have jurisdiction to review the ALJ's second unfavorable decision to determine if it is supported by substantial evidence, it lacks jurisdiction to review the intra-agency decision regarding whether the ALJ complied with the Appeals Council's order); Thompson v. Astrue, 2010 WL 2991488, at *2 (C.D. Cal. July 27, 2010) ("the Court's role is to determine whether the ALJ's final decision is supported by substantial evidence, not whether the ALJ complied with the Appeals Council's remand order."); see also Shawn J. v. Kijakazi, 2022 WL 2254999, at *3 (C.D. Cal., Jan. 5, 2022)

20cv2530-BLM

("[w]hile the Court has jurisdiction to review whether the ALJ's decision is supported by substantial evidence and a correct application of the law, the Ninth Circuit has held in unpublished decisions that courts lack jurisdiction to review whether the ALJ complied with a prior intra-agency order.") (citing Megyesi v. Saul, 773 F. App'x 914 (9th Cir. 2019) ("We lack jurisdiction to review [plaintiff's] argument that the [ALJ] failed to comply with particular aspects of the Appeals Council's remand order.") and Tyler, 305 F. App'x at 332).

Accordingly, remand due to the ALJ's alleged failure to comply with the Appeals Council order is not warranted or appropriate and the Court **DENIES** Plaintiff's motion for summary judgment on this issue.

C.   Duty to Develop the Record

Plaintiff argues that the ALJ failed to develop the record leaving his opinion unsupported by substantial evidence.  Mot. at 26-29.  Specifically, Plaintiff argues that apart from the opinion of Dr. Vafadaran which verified Plaintiff's disability, "there is no examining opinion upon which to base any adjudication."  Id. at 26.  Plaintiff also argues that the opinions of the State Agency Consultants are not based on the compete medical record.  Id. at 27.  Plaintiff notes that the ALJ's current opinion is less restrictive than the ALJ's 2019 decision.  Id. at 27-28.

Defendant contends that the ALJ "properly developed the record by, among other efforts, subpoenaing Plaintiff's medical records, having consulting physicians review the medical records and evaluate Plaintiff's physical and mental functioning, and holding a merits hearing wherein Plaintiff had the opportunity to present evidence and testify."  Oppo. at 17.  Defendant further contends that the ALJ had no duty to further develop the record because no conflicts or ambiguities existed in the record which contained substantial evidence in support of the ALJ's findings.  Id. at 18.  Defendant notes that the ALJ can issue an opinion without relying on a medical opinion because the ALJ is exclusively responsible for evaluating a Plaintiff's RFC which is an administrative and not a medical finding.  Id.  Finally, Defendant contends that the ALJ relied on Drs. Tanaka and Lee's functional assessments.  Id. at 20.

Because the Court is remanding for further development and consideration of the record, the Court declines to evaluate Plaintiff's argument that the ALJ failed to develop the record.  See

*Newton v. Colvin*, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."). However, as set forth above, the Court is concerned about the ALJ's failure to adequately address whether Plaintiff needs a cane to ambulate and/or stand, whether there are legitimate grounds for discounting Plaintiff's claims that she needs a cane, and whether there are jobs in significant numbers in the national economy that Plaintiff can perform.

### REMAND v. REVERSAL

The decision whether to remand for further proceedings or simply to award benefits is within the discretion of the court. See *Aida I. v. Saul*, 2020 WL 434319, at *5 (S.D. Cal., Jan. 28, 2020) (noting that "[t]he law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court.") (citing *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); and *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. See *Gerde v. Berryhill*, 717 Fed. Appx. 674, 677 (9th Cir. 2017) ("[r]emand for further administrative proceedings to consider Dr. Alvord's opinion  and the lay witness testimony is the proper remedy because enhancement of the record would be useful.") (citing *Benecke v. Barnhart*, 379 F.3d 587, 593  (9th Cir. 2004)). On the other hand, if the record has been fully developed such that further administrative proceedings would serve no purpose, "the district court should remand for an immediate award of benefits." *Benecke*, 379 F.3d at 593. "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)). The Ninth Circuit has not definitely stated whether the "credit-as-true" rule is mandatory or discretionary. See *Vasquez v. Astrue*, 572 F.3d 586,

593 (9th Cir. 2009) (acknowledging that there is a split of authority in the Circuit, but declining to resolve the conflict); <u>Luna v. Astrue</u>, 623 F.3d 1032, 1035 (9th Cir. 2010) (finding rule is not mandatory where "there are 'outstanding issues that must be resolved before a proper disability determination can be made'" (internal citation omitted)); <u>Shilts v. Astrue</u>, 400 F. App'x 183, 184-85 (9th Cir. Oct. 18, 2010) (explaining that "evidence should be credited as true and an action remanded for an immediate award of benefits only if [the Benecke requirements are satisfied]" (internal citation omitted)).  "Even if all three requirements are met, the Court retains flexibility to remand for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" <u>Nichols v. Saul</u>, 2019 WL 6252934, at *10 (S.D. Cal., Nov. 22, 2019) (quoting <u>Brown-Hunter</u>, 806 F.3d at 495).  A remand for an immediate award of benefits is appropriate only in rare circumstances. <u>Id.</u>

Here, based on the record before it, the Court concludes that the rare circumstances that may result in a direct award of benefits are not present.  <u>See</u> <u>Leon v. Berryhill</u>, 880 F.3d 1041, 1044 (9th Cir. 2017) ("[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule"); <u>see</u> <u>also</u> <u>Howland v. Saul</u>, 804 Fed. Appx. 467, 471 (9th Cir. 2020) (same).  Instead, the Court finds further administrative proceedings will serve a meaningful purpose by allowing the ALJ to re-examine or further support the decision to reject or discount Plaintiff's subjective symptom testimony.

Therefore, this Court **REVERSES** the ALJ's decision and **REMANDS** for further proceedings to address the errors noted in this Order.

**IT IS SO ORDERED**.

Dated:  9/30/2022

Hon. Barbara L. Major
United States Magistrate Judge